UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KATHERINE JANE McCARTER, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Case No. 4:13cv0346 TCM |
| JOHN EDWARDS DAVIS, | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This is an action filed by Katherine Jane McCarter (McCarter) seeking contribution from John Edward Davis (Davis) for monies McCarter paid in settlement of claims against her by Daniel and Tara Rozum.[1] Davis moves for summary judgment.

## Background

The relevant facts are not in dispute.

In June 2010, John Edward Davis (Davis) was driving a Toyota 4Runner and pulling a trailer in a westbound lane of Interstate 70 in Missouri. (Def.'s Stat. of Uncontroverted Facts ¶ 1-2.[2]) Davis lost control of his vehicle. (Id. ¶ 3.) The 4Runner and trailer went into the median between the east and westbound lanes and came to a stop, the 4Runner resting on its passenger side and the trailer resting on its top. (Davis Dep. at 20[3]; ECF No. 36-1.)

---

[1] The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2] Only those statements of uncontroverted facts that are admitted by the opposing party shall be cited.

[3] All depositions cited were taken in the course of state court proceedings. The parties stipulated to their use in this action.

McCarter, driving a Ford Escort, was behind Davis' vehicle, saw Davis lose control, and pulled her car to the left shoulder of the Interstate to see if Davis was okay. (Def.'s Stat. ¶ 5-7; McCarter Dep. at 22, ECF No. 36-2.) The left tires of her car were on the grass of the median; the right side of her car was off the shoulder line. (Def.'s Stat ¶ 7; McCarter Dep. at 21.) Other vehicles pulled over behind McCarter's. (Id. at 20.) McCarter, and her two passengers, Roma Vora and Anthony Wright, got out of her car. (Def.'s Stat. ¶ 5; McCarter Dep. at 12, 19.) Wright went to assist Davis. (Def.'s Stat. ¶ 9.) McCarter and Vora stood in the grass to the left of McCarter's car. (McCarter Dep. at 19.) Vora called "911." (Def.'s Stat. ¶ 10.) McCarter stayed by her car; she did not go to Davis' vehicle. (Id. ¶ 11-12.)

Other westbound vehicles pulled over on the right side of the Interstate, including a tractor-trailer and, approximately fifty yards in front of it, a Ford Taurus driven by Daniel Rozum (Daniel). (D. Rozum Dep. at 13, 14, ECF No. 36-3; McCarter Dep. at 20, 37.) Daniel had not seen Davis' accident occur, but did see two people on the median heading to a vehicle parked on its side. (D. Rozum Dep. at 9-11.) His wife, Tara Rozum (Tara), was in the car; she also did not see the accident. (Def.'s Stat. ¶ 13; T. Rozum Dep. at 42-43, ECF No. 36-4.) Daniel parked his car as far off the shoulder as he could and not be in the adjacent ravine. (D. Rozum Dep. at 16; T. Rozum Dep. at 22.)

As McCarter stood by her car and Vora was calling "911," McCarter heard the driver of the tractor-trailer yell at her to move her car to the right shoulder. (Id. ¶ 19; McCarter Dep. at 21-22, 61-62.) McCarter then got back into her car, put on her seatbelt, checked for oncoming traffic, and started to drive across the two westbound lanes. (Def.'s Stat. ¶ 21; McCarter Dep. at 22, 24-25, 62.)

Back on the right side of the Interstate, Tara got out of the car and, "keeping as far away from the highway as [she] could stay," walked back east on the gravel side of the shoulder to speak with the man standing by the tractor trailer about whether "911" had been called. (T. Rozum Dep. at 23, 43.) She left her cell phone in her car, intending to return to the car and call "911" if the driver of the tractor trailer said it had not been called. (Id. at 43.) If the call had been made, she would return to the car and she and Daniel would then have driven on. (Id.)

As Tara was walking toward the tractor-trailer, she heard a crash. (Id. at 23, 24, 25.) She looked up and saw a Ford Escort headed toward her. (Id.)

The Ford Escort was the one being driven by McCarter from the left side of the Interstate westbound lanes to the right. (Def.'s Stat. ¶ 20-21.) When at least a portion of the Ford Escort was in the right lane of the westbound traffic, it was struck by a truck pulling a horse trailer. (Bonn Dep. at 40, 50, 53, 58, ECF No. 36-5.) The truck was being driven by Matthew Bonn (Def.'s Stat. ¶ 21.)

The car, driven by McCarter, struck Tara after it was hit by Bonn's truck. (Def.'s Stat. ¶¶ 22, 24.) Tara sustained serious injuries. (Id. ¶ 26.)

Before hitting McCarter's car, Bonn did not know of Davis' accident. (Bonn Dep. at 69.)

Neither Daniel nor Tara Rozum intended to cross the Interstate to the median where Davis was. (D. Rozum Dep. at 28; T. Rozum Dep. 17, 43, 44.) They only stopped to see if "911" had been called. (D. Rozum Dep. at 28, 29-30; T. Rozum Dep. at 43.) It is undisputed that Daniel would not have stopped had he not seen Davis' overturned vehicle in the median.

(D. Rozum Dep. at 27.) Asked if she would not have stopped had she not seen Davis' overturned vehicle, Tara was unable to answer, explaining that "it would have depended on what [she] saw." (T. Rozum Dep. at 45.)

Tara and Daniel Rozum filed suit against McCarter in the Circuit Court of Montgomery County, Missouri. See Rozum v. McCarter, 10AA-CC00040 (Mo. Cir. Ct Nov. 17, 2010). McCarter was the only named defendant. (Id.) She filed a third-party petition against Davis, Bonn, and Bonn's business, Airpark Equestrian Stables, LLC. (Def.'s Ex. C, ECF No. 33.) Davis moved for summary judgment, arguing that he was not liable for the Rozums' injuries. (Pl.'s Ex. 9, ECF No. 36-9.) The motion was granted as to Bonn's cross-claim and denied as to McCarter's claims for damages and contribution. (Pl.'s Ex. 6, ECF No. 36-6.) McCarter then dismissed her claims against Davis without prejudice. (Pl.'s Ex. 7, ECF No. 36-7.) In October 2012, McCarter settled the Rozums' resulting claims for $450,000. (Def.'s Stat. ¶ 27; Pl.'s Compl. Ex. A, ECF No. 1-1 at 15.)

In December 2012, McCarter filed this action against Davis in the Circuit Court of St. Louis County, Missouri, for contribution and damages. The case was removed to federal court on diversity grounds. She has since dismissed without prejudice her claim against Davis for damages. Remaining is her claim for contribution for the monies she paid in settlement of the Rozums' claims.

In his motion for summary judgment, Davis argues that McCarter has not, and cannot, establish a right to contribution because he is not liable to the Rozums under the rescue doctrine. McCarter disagrees.

## Discussion

<u>Summary Judgment Standard.</u>  Rule 56(a) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **MidAmerican Pension and Emp. Benefits Plans Admin. Comm. v. Cox**, 720 F.3d 715, 718 (8th Cir. 2013); see also **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986) (discussing prior Rule 56(c), the predecessor to Rule 56(a) of the Federal Rules of Civil Procedure). "The movant 'bears the initial responsibility of informing the . . . [C]ourt of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" **Torgerson v. City of Rochester**, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting <u>Celotex Corp.</u>, 477 U.S. at 323) (last two alterations in original). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing a genuine issue for trial.'" **Id.** (quoting <u>Celotex Corp.</u>, 477 U.S. at 324).  The existence of a factual dispute is not enough alone to avoid entry of summary judgment; "rather, the dispute must be outcome determinative under the applicable law." **Hammer v. City of Osage Beach, MO**, 318 F.3d 832, 837 (8th Cir. 2003). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" **Torgerson**, 643 F.3d at 1042 (quoting <u>Reeves v. Sanderson Plumbing Prods. Inc.</u>, 530 U.S. 133, 150 (2000)).  And, "[w]here the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." **Walsh v. United States**, 31 F.3d 696, 698 (8th Cir. 1994).

<u>Contribution.</u>  "Under Missouri law, a contribution claim generally arises only when 'both the party seeking contribution and the defendant against whom contribution is sought [are] . . . tortfeasor[s], originally liable to the plaintiff-injured party.'" **Eubank v. Kansas City Power & Light Co.**, 626 F.3d 424, 429 (8th Cir. 2010) (quoting Gramex Corp. v. Green Supply, Inc., 89 S.W.3d 432, 442 (Mo. 2002) (en banc)) (alterations in original); accord **Hance v. Altom**, 326 S.W.3d 133, 136 (Mo. Ct. App. 2010).  "The rationale for a contribution system in allocating liability among negligent tortfeasors is that, since each party has been negligent and each party's negligence has harmed plaintiff, the foundation . . . principle of fairness requires that each defendant should share liability to the extent of his responsibility." **Gramex Corp.**, 89 S.W.3d at 440 (alteration in original) (internal quotations omitted).  "The principle of fairness underlies . . . the right to contribution," which is "applied to ensure that the defendant is not forced to bear an unfair burden."  **Id.** (internal quotations omitted).

Thus, to prevail on her claim of contribution against Davis, McCarter must establish that he also is liable to the Rozums.  She contends that he is liable under the rescue doctrine.  As the facts of the underlying injuries are not in dispute, her claim may be resolved on summary judgment.

<u>The Rescue Doctrine.</u>  The Missouri Supreme Court addressed the question of the applicability of the rescue doctrine in **Krause v. U.S. Truck Co.**, 787 S.W.2d 708 (Mo. 1990) (en banc).  The court first noted that "[i]n any action for negligence, the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury;

- 6 -

failure of the defendant to perform that duty and, that plaintiff's injury was proximately caused by defendant's failure." **Id.** at 710. "Foreseeability . . . plays a prominent role in determining proximate cause. If two or more persons are guilty of consecutive acts of negligence closely related in time, there is a question as to whether the initial act of negligence was the proximate cause of the injury or whether there was an efficient, intervening cause." **Id.** (internal quotations omitted). This foreseeability requirement is satisfied in "particular factual situation[s]." **Id.** at 710. "In those factual circumstances where one is injured while attempting a rescue, the negligence creating the peril requiring rescue is held to be the proximate cause of the rescuer's injury." **Id.** at 710-11. As observed by Justice Cardozo in the seminal case of **Wagner v. Int'l Ry. Co.**, 232 N.Y. 176 (N.Y. 1921), cited in **Krause**, 787 S.W.2d at 711,"'[d]anger invites rescue. . . . The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to the rescuer. . . . The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path. . . . The risk of rescue, if only it be not wanton, *is born of the occasion*." **Id.** at 180 (emphasis added).

McCarter argues that "because at the time of the accident involving [her] and Ms. Rozum, Ms. Rozum was attempting to rescue [Davis] and his rescue was necessitated by his negligence," the Rozums could have recovered from Davis under the rescue doctrine; therefore, she has a right to contribution from Davis for her liability to the Rozums.[4] (Pl.'s

---

[4]The Court notes that McCarter did not allege in her amended complaint against Davis that the Rozums were rescuers. (See Am. Compl. ¶ 1-28.) She alleges only that the Rozums' claims against her arose from a chain of events that begun when Davis negligently caused an accident from which he needed to be rescued.

- 7 -

Mem. at 2, ECF No. 36.) Davis contends that the rescue doctrine does not apply because (a) the Rozums did not attempt to rescue him and (b) his negligence was not the proximate cause of the Rozums' injuries because there was an efficient intervening cause.

Davis' two arguments address the "two important benefits" of the rescue doctrine described by the Missouri Supreme Court in **Lowrey v. Horvath**, 689 S.W.2d 625 (Mo. 1985) (en banc).

> First, under the rescue doctrine it is not negligence to knowingly and voluntarily place one's self in a position where the likelihood of receiving serious physical injury is great when the exposure to such danger is conducted in a reasonable manner and for the purpose of saving human life. Second, the plaintiff may invoke the rescue doctrine to establish that the defendant's negligence in creating the peril which induced the injured person to attempt to rescue another who was imperiled was the proximate cause of the injury for which recovery is sought . . . .

**Id.** at 627 (internal citations and quotations omitted) (alteration in original).

The undisputed facts are that Davis' accident was in the median of the Interstate, i.e., between the westbound and eastbound lanes, and the Rozums pulled over on the shoulder of the right lane. They had not seen the accident occur. Neither Daniel nor Tara intended to cross the highway to get to Davis. Tara intended only to determine if "911" had been called. She did this by approaching the tractor trailer driver, also on the shoulder of the right lane, to ask if it had been called and, if it had not been, she planned to return to her car and make the call. When approaching the driver on foot, she walked as far away from the traffic lane as possible while avoiding the ravine. Thus, Tara purposefully *avoided* putting herself in a position where she might be injured. Moreover, the maximum assistance she, and Daniel,

intended to render was to make a phone call if necessary to obtain assistance for Davis from someone else.

In **Allison v. Sverdrup & Parcel and Assocs.**, 738 S.W.2d 440, 454 (Mo. Ct. App. 1987), cited by Plaintiff, the court applied the "forceful reasoning" of cases from other jurisdictions and held that "a person who sees another in imminent peril created by the negligence of defendant will not be charged with negligence in *risking his or her own life or serious injury in an attempt to rescue*, provided he or she does not act recklessly or rashly." (Emphasis added.) Accord **French v. Uribe, Inc.**, 130 P.3d 370, 375 (Wa. Ct. App. 2006) (including a requirement that the danger to the person must be imminent for the rescue doctrine to apply). Citing cases from five other jurisdictions, the Massachusetts Court of Appeals noted that "[a] common thread runs through the cases which recognize the rescue doctrine, and that is *some act of intervention*, e.g., moving a vehicle . . . administering first aid . . . ." **Barnes v. Geiger**, 446 N.E.2d 78, 82 (Mass. Ct. App. 1983) (emphasis added). "To achieve the status of a rescuer, a claimant's purpose must be more than investigatory. There must be asserted some specific mission of assistance by which the plight of the imperilled could reasonably be ameliorated." Id. See e.g. **Lambert v. Parrish**, 492 N.E.2d 289, 291 (Ind. 1986) (husband who was injured in attempt to reach the scene of an accident involving his wife and defendant had not exerted any physical activity to rescue his wife from consequences of defendant's allegedly tortious act and was not a rescuer under the rescue doctrine).

McCarter argues that the Rozums did intervene "by attempting to assist [Davis] and obtain emergency aid for him" and, at a minimum, she has established that the question is one

for the jury. (Pl.'s Mem. at 15.) In support of her argument, however, she has omitted several undisputed facts. She states that after exiting the Rozums' vehicle, Tara "began walking back to the scene of the accident." (Id. at 5; see also id. at 14.) She did not. She and Daniel specifically testified that they had no intention of crossing the highway, which they would have to do to reach the scene of the accident. Cf. **Kimble v. Carey**, 691 S.E.2d 790, 794 (Va. 2010) (woman struck by driver as she crossed the highway to assist defendant, who she saw slumped over in his car, could bring case against Carey under the rescue doctrine for her injuries); **Hoefer v. Roche Biomedical Labs.**, 826 S.W.2d 49, 50-51 (Mo. Ct. App. 1992) (man who was struck by vehicle that slid off the highway could bring claims under rescue doctrine against woman who had earlier lost control of her car on an icy highway when man saw the woman's car in a ditch, crossed the road to help her, and was assisting her when struck by other vehicle). Instead, Tara walked toward the driver of the tractor trailer to ask if "911" had been called. In doing so, she purposefully placed herself as far out of danger of injury as possible. If she had determined that "911" needed to be called, she would have made the call from her car, again removing herself from danger. Neither she nor Daniel had seen the accident and neither testified that the inquiry about whether "911" had been called was for the benefit of Davis and not to respond to a motor vehicle accident involving only property damage. See **Welch v. Hesston Corp.**, 540 S.W.2d 127, 129 (Mo. Ct. App. 1976) (Missouri rescue doctrine does not apply to rescuers of property).

The Court finds that, for the purposes of Missouri's rescue doctrine, Tara Rozum was not a rescuer by virtue of her activities of walking on the right shoulder of the highway for the sole purpose of determining from a bystander on that same shoulder whether "911" needed

to be called to respond to an accident – not witnessed by either Rozum – in the median on the other side of the highway. Moreover, for the following reasons, even if Tara Rozum were a rescuer, McCarter does not have a right of contribution from Davis for injuries Tara sustained when struck by McCarter's car.

It is a "basic theory" of the rescue doctrine that "the proximate cause of the injury to the rescuer is the defendant's negligence in creating the peril which induced the rescuer to act." **Allison**, 738 S.W.2d at 454-55. "The determination of whether proximate cause exists is usually a question left for the jury, however, a court may decide the issue of proximate cause as a matter of law if the evidence reveals the existence of an intervening cause which eclipses the role of the original actor's negligence in the plaintiffs injury." **Hargis v. Lankford**, 372 S.W.3d 82, 87 (Mo. Ct. App. 2012).

In **Metzger v. Schermesser**, 687 S.W.2d 671 (Mo. Ct. App. 1985), the court reversed a trial court's decision to grant a directed verdict in favor of defendants who were being sued under the rescue doctrine for injuries to a plaintiff sustained when the plaintiff was struck by a vehicle as he attempted to turn on the flashers in another vehicle that was immobile as a result of the defendants' negligence. After defendants' vehicles collided in an intersection around midnight and during a rainstorm, the plaintiff, hearing the collision behind him, had stopped his car and gone back to the intersection to assist. **Id.** at 672. One of the defendant's car was blocking the intersection. **Id.** The plaintiff went to the car to turn on its emergency flashers and was inside the car when it was struck by another, moving vehicle. **Id.** The court rejected the defendants' argument that, although their respective negligence was a "'but for'"

cause of the second collision, it was not a proximate cause of the plaintiff's injuries due to the intervening negligence of the other vehicle's driver five to ten minutes after their collision. **Id.** at 673-74. "Although the word 'intervention' implies a temporal succession of events, time alone is not the criterion by which the legal import of an intervening act is measured. Rather, the issue is whether or not the intervening act so supersedes the earlier conduct as to excuse responsibility for the consequences thereof." **Id.** The court found the "[t]he *normal consequence* of the [defendants'] collision with its resultant obstruction of both northbound lanes of a dark street in a heavy rainstorm was that an oncoming car would run into the vehicles." **Id.** at 674 (emphasis added). Thus, it was for the jury to decide "whether the antecedent negligence was totally superseded or was contributory . . . ." **Id.** The court distinguished an earlier holding in **Strake v. R.J. Reynolds Tobacco Co.**, 539 S.W.2d 15 (Mo. Ct. App. 1976), that the negligence of a third driver was an independent cause of injuries to a man whose vehicle was struck in the rear by another driver. After the first collision, the man and the other driver stood in the street by their vehicles and discussed the collision. **Id.** at 717. Although the vehicles were straddling the two eastbound traffic lanes, traffic was able to pass. **Id.** Five to six minutes later, the third driver struck the other driver's car, pushing it into the man's vehicle and knocking him away. **Id.** The injured man successfully sued the other driver. **Id.** The other driver argued on appeal that his motion for a directed verdict should have been sustained. **Id.** The appellate court agreed and reversed the jury verdict against him. **Id.** When distinguishing **Strake**, the **Metzger** court found that there was an "interruption of the chain of events and . . . break in the continuous sequence"

in **Strake** as evidenced by the fact that other drivers were able to avoid the cars involved in the first accident; consequently, those cars "did not present a continuing hazard." 687 S.W.2d at 673.

McCarter argues that her rescue attempt of Davis was ongoing when she moved her car and struck Tara Rozum; therefore, regardless of any negligence on her part, she has a claim of contribution from Davis for the Rozums' injuries. She correctly notes that generally in Missouri "a defendant need not be the sole cause of plaintiff's injuries for liability for said injuries to be imposed; liability attaches if his negligence combines with another's to produce the injuries for which damages are sought." (Pl.'s Mem. at 16.) She contends that the question of how much her negligence contributed to the Rozums' injuries is a question for the jury. Interestingly, in support of her argument McCarter cites **Strake**, which held that the circumstances in that case *did not* present a jury question. Similarly, the undisputed facts in the instant case do not present a jury question.

The undisputed facts are that McCarter's rescue attempt was not ongoing when she decided to get back into her car and drive it across two Interstate lanes to the opposite shoulder. After seeing the accident, McCarter pulled over to the median and stopped her car. She and her two passengers got out of the car. One of the passengers went to Davis' 4Runner to see if he could assist Davis. The other passenger called "911." After hearing the tractor trailer driver yell at her to move her car to the right shoulder, McCarter then got back into her car, put on her seatbelt, checked for oncoming traffic, and started to drive across the two westbound lanes.

"[N]ot all injuries to rescuers are within the scope of foreseeable risk: liability does not attach for injuries suffered as a result of 'risks that would not be anticipated to arise from the rescue.'" **Leavitt v. Brockton Hosp., Inc.**, 907 N.E.2d 213, 221 (Mass. 2009) (quoting *Restatement of Torts (Third) (proposed Final Draft)* § 32, cmt. c (2005)). See also **Oberson v. U.S. Dep't of Agriculture, Forest Serv.**, 514 F.3d 989, 1001 (9thCir. 2008) ("With respect to rescuers, '[t]he aspect relevant to scope of liability provides that an actor, whose tortious conduct puts the actor or another at risk, is subject to liability to a third person who is injured *while attempting* to come to the aid of the actor of other imperiled person.'" (quoting *Restatement of Torts (Third) (proposed Final Draft* § 32, cmt. b (2005) (second alteration in original) (emphasis added)).

McCarter argues that she was not negligent for "knowingly and voluntarily plac[ing] herself in a position where the likelihood of receiving serious physical injury is great where it is done for the purpose of saving human life." (Pl.'s Mem. at 17.) Her decision to follow the driver's instructions to move her car from the median across two lanes of Interstate highway to the right shoulder[5] was *not* done, however, for the purpose of saving human life. The accident was in the median. Her act of moving her car did nothing to assist in the rescue of Davis.

McCarter argues that a "but for" causation theory applies to her claims for contributions. In other words, because she would not have struck Tara Rozum but for Davis' accident, he is liable to her for the monies she has paid to Tara. The **Metzger** court

---

[5]The Court finds it telling that McCarter omits from her memorandum any mention of the reason why she moved her car, i.e., the tractor trailer driver's instruction.

recognized that intervening negligence may supersede the negligence of an original tortfeasor under the rescue doctrine, although in that case the question of whether it had was for the jury to decide. In **Bole v Erie Ins. Exchange**, 50 A.3d 1256, 1260 (Pa. 2012), the Pennsylvania Supreme Court held that the rescue doctrine did "not make an original tortfeasor liable for injuries attributable to a superseding cause." "The rescue doctrine holds the original tortfeasor liable, as one would reasonably foresee that rescuers summoned may be injured. It is quite another matter to make him a guarantor of the rescuer's safety." **Id.**

Under McCarter's theory, Davis would be a guarantor of her and Tara's safety for the unforeseeable consequences of a bystander yelling across the highway to McCarter to move her car after she had rendered assistance to Davis and of McCarter being struck by an oncoming vehicle while doing so. The Court finds that the rescue doctrine does not accommodate such a theory.

Collateral Estoppel. As noted above, the Montgomery Circuit Court denied Davis' motion for summary judgment on McCarter's claims. Davis argues that this ruling does not preclude him from raising the same arguments in this proceeding. McCarter disagrees.

Under Missouri law, "[f]or an issue in the present action to be precluded by the doctrine of collateral estoppel: (1) it must be identical to an issue decided in a prior adjudication; (2) the prior adjudication must have resulted in a judgment on the merits; (3) the party against whom the doctrine is being asserted must have been a party or was in privity with a party to the prior adjudication; and, (4) the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the prior adjudication." **Johnson v. Mo. Dept. of Health and Senior Servs.**, 174 S.W.3d 568, 580 (Mo. Ct. App.

2005). The focus of the parties' disagreement is whether the order denying Davis' motion for summary judgement is "a judgment on the merits."

"[A] 'judgment on the merits is one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial.'" **Id.** at 585 (quoting St. Louis Univ. v. Hesselberg Drug Co., 35 S.W.3d 451, 455 (Mo. Ct. App. 2000)). The one-sentence ruling at issue did not *grant* summary judgment. Moreover, even had the other parties been dismissed, McCarter's third-party claims against Davis would have remained to be tried. Cf. **State ex rel. City of Blue Springs, Mo. v. Schieber**, 343 S.W.3d 686, 690 (Mo. Ct. App. 2011) (holding that collateral estoppel principles applied to an order granting one defendant summary judgment once plaintiff dismissed without prejudice the other parties).

The Court finds that Davis is not collaterally estopped from presenting his motion for summary judgment.

## **Conclusion**

The unique, undisputed facts in this case present the unusual case in which, as a matter of law, McCarter has no claim of contribution from Davis for injuries she caused the Rozums when, in response to instructions from a bystander, McCarter drove her car across the highway from where she had stopped to assist Davis and, when doing so, was struck by an oncoming vehicle, causing her to hit Tara Rozum as she walked on the opposite shoulder from where the accident was for the sole purpose of inquiring of that same bystander whether "911" had been called.

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of John Edward Davis for summary judgment is **GRANTED**. [Doc. 32]

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  28th  day of July, 2014.